**WALDAMEER PARK, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MORRISON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 20, 2002.

Decided March 17, 2003.

---

Richard E. Bordonaro, Erie, for petitioner.

Cynthia M. Porta Clark, Pittsburgh, for respondent.

Before COLINS, President Judge, SMITH-RIBNER, J., and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Waldameer Park, Inc. (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting the Claim Petition filed by Shauna Morrison (Claimant). We affirm.

Claimant filed a Claim Petition alleging that, on July 10, 1997, she injured her right hand while working as a ride operator for Employer. The injury was described as: "Multiple lacerations, abrasions, and contusions of the right hand resulting in hand and wrist pain and stiffness, and reflex sympathetic dystrophy." Employer filed an Answer denying all the allegations set forth in Claimant's Claim Petition. Thereafter, hearings were held before the WCJ.

Claimant testified that during the summer of 1997 she was worked as ride operator for the Thunder River ride at Employer's amusement park. While she was performing this job, Claimant cut her right hand on a metal overhang while rescuing a child who had become stuck in the ride. Immediately after the accident, one of the owners of the amusement park took Claimant for medical treatment and she received approximately seventeen stitches in her right hand. Claimant testified that for the first couple of weeks after the accident her hand was very painful. Eventually, the pain subsided. However, her hand continued to feel very uncomfortable and she had trouble writing.

When Claimant returned to college in the fall, she continued to have trouble writing and had limited flexibility in her hand. During the next summer, Claimant's hand

started to feel worse. Claimant testified that while she was working at a computer she felt pain in her arm and then her hand stiffened and became difficult to use. Thereafter, Claimant saw a doctor who prescribed occupational therapy. Despite this therapy, the pain and stiffness in her hand continued. Claimant then started seeing Gregg G. Weidner, M.D., a pain specialist. Dr. Weidner prescribed pain medication, which did not help much. However, he also prescribed nerve blocks, which did help to improve the functioning of Claimant's hand. Claimant graduated from college, but then began graduate school in the spring of 1999. During this time, Claimant had trouble writing, typing, and lifting equipment. Currently, Claimant has stiffness in her hand and sometimes it will "freeze up" or become very painful. However, Claimant is able to move her hand and perform her job. The WCJ accepted the testimony of Claimant as credible.

After Claimant's testimony, the WCJ asked Claimant's attorney what type of relief Claimant was seeking. The following exchange then took place:

> Claimant's attorney: Well, with the three-year statute of limitations approaching and no Notice of Compensation Payable having been issued, I'm concerned should she, [Claimant], need treatment in the future, or should have disability in the future because of her hand that she would not be protected under the Pennsylvania Workers' Compensation Act.
> WCJ: You want to have that knowledge, but are you asking for any disability period?
> Claimant's attorney: I don't have her earning records. We may ask for a disability period, but it's unlikely ... that there'd be any disability extending more than 52 weeks ...
> WCJ: So unless I hear differently, I should assume there are no wage-loss benefits being sought?
> Claimant's attorney: I think so ... I would like an opportunity to collect her earnings records, and to research this issue ...

(N.T. 5/25/2000, pp. 49–50). Claimant never did make any claim for wage-loss benefits. Rather, she only sought acknowledgement of the injury and the payment of any future medical expenses by filing the Claim Petition before her rights to those future benefits became barred by the three-year statute of limitations.

In support of the Claim Petition, Claimant presented the testimony of Dr. Weidner, who began treating her on October 27, 1998. Dr. Weidner testified that Claimant suffers from Type 1 Complex Regional Pain Syndrome, which is also commonly called Reflex Sympathetic Dystrophy (RSD). Dr. Weidner also concluded that Claimant's July 10, 1997 work-related injury caused this condition. (N.T. 11/02/2000, pp. 15–16).

In defense of the Claim Petition, Employer presented the testimony of Betsy Blazek–O'Neill, M.D., who examined Claimant on November 14, 2000. Dr. Blazek–O'Neill found no evidence of RSD and concluded that Claimant recovered from her hand injury. (N.T. 1/22/2001, pp. 9–10). Dr. Blazek–O'Neill did not testify that the injury never occurred. The WCJ accepted the testimony of Dr. Weidner as more credible that the testimony of Dr. Blazek–O'Neill.

■ By decision and order circulated on July 11, 2001, the WCJ concluded that Claimant sustained her burden of proving that she sustained a right hand laceration injury during the course and scope of her employment and that she developed Type 1 Complex Regional Pain Syndrome. Ac-

cordingly, the WCJ ordered Employer to pay all of Claimant's medical expenses related to this injury. Furthermore, the WCJ felt that Employer's contest was unreasonable because it forced Claimant to litigate whether the injury occurred and whether Employer had notice of the injury when one of Employer's co-owners assisted Claimant in receiving medical treatment after the injury. Additionally, the WCJ noted that although Employer's medical expert disagreed with Claimant's diagnosis, she did not testify that the injury did not occur. Accordingly, the WCJ also ordered Employer to pay Claimant's attorney's fees for this unreasonable contest. Employer appealed to the Board, which affirmed the order of the WCJ. This appeal followed.[1]

On appeal, Employer argues that: 1) Claimant failed to present substantial, competent and credible evidence that she suffered a compensable work-related injury and 2) the WCJ erred by assessing counsel fees against Employer for an unreasonable contest under Section 440 of the Workers' Compensation Act (Act) [2] because Claimant presented no evidence of wage loss or unpaid medical bills and because Employer had reason to challenge the extent of Claimant's disability.

 Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa.Cmwlth.1998). In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed

before the factfinder. *Id.* Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party. *Id.* Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ. Rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Id.* It is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.* It is with these principles in mind that we consider this challenge.

 First, we address Employer's argument that Claimant failed to sustain her burden of proving that she suffered a compensable work-related injury. Employer argues that the testimony of Dr. Weidner should have been rejected as not credible and that his testimony does not rise to the level of substantial evidence to support the grant of the Claim Petition. Dr. Weidner examined Claimant and, as a result of those examinations, concluded that she suffers from an RSD type disorder of her right hand as a result of the work-related injury. The WCJ accepted the testimony of Dr. Weidner as credible. It is evident that Employer's argument is merely an attack of the WCJ's credibility determina-

---

1. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was

committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 996.

tions, which this Court cannot overturn on appeal. Thus, we fail to see how the WCJ erred by granting the Claim Petition.

■ Second, Employer argues that the WCJ erred by ordering it to pay Claimant's attorney's fees because Claimant presented no evidence of wage loss or unpaid medical bills and because it had reason to challenge the extent of Claimant's disability. As part of this argument, Employer also asserts that it did not have to acknowledge Claimant's injury through the issuance of a notice of compensation payable because Claimant did not suffer any loss of wages nor did she have any unpaid medical bills. In support of this argument, Employer cites *Lemansky v. Workers' Compensation Appeal Board (Hagan Ice Cream Co.)*, 738 A.2d 498 (Pa.Cmwlth. 1999), *petition for allowance of appeal denied*, 563 Pa. 668, 759 A.2d 389 (2000). In *Lemansky,* we stated that:

> *Employer's argument ignores § 406.1 of the Act, which provides that an employer shall promptly investigate each injury reported or known to the employer, and shall commence payment of compensation due no later than the twenty-first day after the employer has notice or knowledge of the employee's disability. If an employer believes that the claim is not compensable, it must issue a notice of denial within twenty-one days.* Having received tacit acknowledgement in the form of medical payments that his neck injury was work-related, Claimant requested that Employer formally acknowledge the injury through issuance of appropriate workers' compensation documents. While Employer never debated that Claimant's neck injury was work-related, it declined Claimant's request relying on SWIF's

policy not to issue such documents in "medical only" cases so as to avoid maintaining two open claims. To protect his right to future benefits, Claimant initiated the prudent action of filing a claim petition to obtain a suspension of his disability benefits. Employer responded with a denial and demand of strict proof of all allegations contained in the claim petition. Employer's action necessitated that Claimant incur additional attorney's fees resulting from prosecution of his claim petition. The WCJ's findings of fact indicate that *Employer paid all medical bills derived from Claimant's neck injury, then denied all of his claim petition allegations, only to admit through testimony that it knew Claimant's neck injury was work-related* ... Employer's argument in the proceedings below and again before this Court is that nothing in the Act requires that it issue any documentation where the employee does not incur a loss of earnings. Our reading of the Act indicates that indeed Employer does have an affirmative obligation to accept or deny the injury as work-related within twenty-one days of notice. 77 P.S. § 717.1. *Once an employer elects to take no action and require the claimant to litigate the issue of compensability, it must then pay Claimant's attorney's fees unless it can prove that its contest was reasonable.*

*Id.* at 502 (citations omitted, emphasis added). It is evident that *Lemansky* is directly contrary to Employer's position and that the case now before this Court presents a situation nearly identical to the one in *Lemansky.* Thus, pursuant to Section 406.1 of the Act,[3] Employer did have a duty to investigate Claimant's claim that

---

**3.** 77 P.S. § 717.1. This Section was added by Section 3 of the Act of February 8, 1972, P.L. 25.

she suffered an injury and then issue a notice of compensation payable or denial. Because it is uncontradicted that Claimant did in fact suffer an injury, the proper course of action would have been for Employer to issue a "medical only" notice of compensation payable. Then, Employer could challenge any future medical bills it thought were unreasonable or not causally related to the injury or any wage loss benefits it thought were unwarranted rather than forcing Claimant to file a Claim Petition prior to the expiration of the three-year stature of limitations for the purpose of preserving her right to any future benefits.[4]

Next, we must determine whether Employer's actions necessitate an award of attorney's fees. Section 440(a) of the Act provides that:

(a) In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer.

77 P.S. § 996(a). If an employer fails to issue a notice of compensation payable or denial, thus forcing the claimant to litigate the compensability of the injury, the employer will be liable for the payment of the claimant's attorney's fees unless it can prove that its contest was reasonable. *Lemansky*, 738 A.2d at 501. "A reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences and there is an absence of evidence that an employer's contest was frivolous or filed to harass a claimant." *Wertz v. Workmen's Compensation Appeal Board (Department of Corrections)*, 683 A.2d 1287, 1293 (Pa.Cmwlth.1996). Whether an employer has presented a reasonable contest is a question of law that is fully reviewable by this Court. *Lemansky*, 738 A.2d at 501.

In this case, as in *Lemansky*, Employer knew that Claimant did in fact suffer an injury and paid Claimant's medical bills. However, Employer never issued a notice of compensation payable and Claimant was forced to hire an attorney. The attorney filed a Claim Petition on the behalf of Claimant and Claimant incurred attorney's fees. Then, Employer filed an Answer denying *all* the allegations in the Claim Petition. Thus, Claimant was forced to incur additional attorney's fees to litigate whether the injury even occurred and whether Employer had sufficient notice of the injury when one of Employer's co-owners knew the injury occurred because that person took Claimant for medical treatment after the injury. Employer did present contrary medical evidence to defend against the Claim Petition, as Dr. Blazek–O'Neill testified that Claimant did

---

4. Section 315 of the Act provides that: "In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof." 77 P.S. § 602.

not suffer from RSD. However, Dr. Blazek–O'Neill did not dispute that the injury occurred. Thus, Employer presented absolutely no contrary medical evidence as to the actual occurrence of the injury and Claimant was forced to litigate this issue.

We believe it is reasonable to conclude that if Employer would have followed the Act by issuing a notice of compensation payable acknowledging that Claimant did in fact suffer a right hand injury, it is quite possible that Claimant never would have needed to hire an attorney and incur attorney's fees, as her right to any future medical benefits would have been secure. Employer was paying Claimant's medical bills and Claimant had made no claim for wage loss benefits, so there would have been nothing to litigate. At the first hearing before the WCJ, Claimant's attorney indicated that this was the only reason why Claimant was filing a Claim Petition and that she was most likely not seeking wage loss benefits. In fact, Claimant never did make a claim for wage loss benefits. It is evident that Employer's failure to follow the procedures set forth in the Act is the reason that Claimant was forced to hire and attorney and incur attorney's fees. For this reason, Employer's contest was unreasonable and it should be liable for the payment of Claimant's attorney's fees. Thus, the Board did not err by affirming the WCJ's award of attorney's fees.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, March 17, 2003, the order of the Workers' Compensation Appeal Board docketed at A01–2210 and dated July 25, 2002 is hereby AFFIRMED.